IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLENA M. SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-3303-CV-S-RED |
| | ) | |
| U.S. POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 28). After careful consideration, this Court **GRANTS** Defendant's motion.

## BACKGROUND

Plaintiff filed a pro se complaint, using the Court's form for filing a Title VII lawsuit. She bases her Title VII allegations off of the conduct of a female co-worker, Lannatta "Bo" Yoachum. Plaintiff worked at the post office for two months from September 2, 2006 until November 1, 2006. Plaintiff's complaints about her co-worker began almost immediately after she started work. Within the first few days, at the suggestion of a co-worker, Simmons began to keep notes of her claimed problems with Yoachum. Her written notes reflect that:

- On September 9, 2006, Yoachum moved Plaintiff's equipment while she was sweeping;
- On September 19, 2006, Yoachum pushed her cart away from her;
- On September 20, 2006, Yoachum verbally abused Plaintiff;
- On September 30, 2006, Yoachum turned her machine off while she was working on the city belt;
- On October 5, 2006, while she was sweeping, Yoachum shoved her equipment, slammed tubs, and started "being verbal";
- On October 8, 2006, Yoachum pushed Plaintiff and got between her and her machine;
- On October 13, 2006, Yoachum prevented Plaintiff from doing her job.

Plaintiff first spoke to a supervisor, Kim Ritter, on a couple of occasions about Yoachum pushing her, taking her equipment, and turning her equipment off. When Plaintiff was dissatisfied with the response of her supervisors, she "went up the chain of command" to the shift supervisor and postmaster.

## STANDARD OF REVIEW

According to Fed. R. Civ. P. 56(a), summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When ruling on a motion for summary judgment, the Court should view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence." *Reed v. ULS Corp*, 178 F.3d 988, 990 (8th Cir. 1999). A party can show that a fact is not genuinely disputed by "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

## ANALYSIS

Plaintiff's pro se complaint appears to assert four claims under Title VII: (1) hostile work environment; (2) gender discrimination; (3) disability discrimination; and (4) constructive discharge.

**I.      Hostile Work Environment**

In order to be successful on a claim for hostile work environment, Plaintiff must show:

> 1) she was a member of a protected group; 2) the occurrence of unwelcome harassment; 3) a causal nexus between the harassment and her membership in the protected group; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008).

A cognizable hostile work environment claim requires the harassment be "sufficiently severe

2

or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Helton v. Southland Racing Corp.*, 600 F.3d 954, 958 (8th Cir. 2010). Furthermore, the work environment must be both objectively and subjectively offensive, meaning a reasonable person would find the work environment hostile or abusive, and, further, that Plaintiff actually perceived the environment as such. *Helton*, 600 F.3d at 958-59.

Finally, determining whether or not the alleged harassment is sufficiently severe and pervasive is determined "from all of the circumstances, including the frequency and the severity of the discriminatory conduct; 'whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 959 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993)).

Here, Defendant concedes that Plaintiff is female, and, thus, part of a protected group. Defendant additionally concedes that the behavior described took place and, therefore, subjected Plaintiff to some unpleasantness in the workplace. However, there is a genuine issue of fact as to whether there was a causal nexus between the claimed harassment and Plaintiff's gender. This is illustrated through the deposition of Gary Raigan, a co-worker, who stated that Yoachum would treat him the same as Plaintiff and that Yaochum would "do this to anybody." Another co-worker, Michael Caird, said Yoachum was not very pleasant for anyone to work with and he thought Yoachum did not treat him as bad as she treated Plaintiff. Therefore, there appears to be a genuine issue of material fact as to whether Plaintiff was harassed due to her gender.

However, it does not appear that the alleged harassment is severe enough to constitute a Title VII claim as a reasonable person would not find the work environment hostile or abusive as those terms are defined in the relevant case law. To clear the high threshold of actionable harm, Plaintiff

3

must show that the "work place is permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. Here, Plaintiff worked at the post office for just two months and, in her first one and one-half months, she noted seven specific incidents of alleged harassment. These incidents consisted of Yoachum moving Plaintiff's equipment, pushing her cart away from her, turning her machine off, slamming tubs, and being verbal. The Eighth Circuit has found that a hostile work environment did not exist in cases more severe than the one at hand. *See Duncan v. General Motors Corp.*, 300 F.3d 928 (8th Cir. 2002)(concluding that a co-workers request for a relationship, "four or five isolated instances of [the co-worker] briefly touching [plaintiff's] hand," the co-worker's request to the plaintiff for the plaintiff to draw his planter (where the co-worker had a planter on his desk shaped like a man, with a hole in the man's pants allowing for a cactus to protrude), the co-worker and another individual's creation and display of a poster that portrayed the plaintiff as the president and CEO of the "Man Hater's Club of America," and the co-worker asking the plaintiff to type up the beliefs of the "He-Men Women Hater's Club" did not meet the hostile work environment standard.). After all, Title VII does not set forth "a general civility code for the American workplace" *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 619 (8th Cir. 2007)(internal quotation omitted) and "the high threshold necessary to sustain [Title VII] actions "'filter[s] out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes and occasional teasing.'" *Duncan*, 300 F.3d at 934 (internal citations omitted). Therefore, based on the uncontroverted facts, Plaintiff's work environment did not meet the threshold of severity required for a Title VII case and, thus, it is appropriate to grant summary judgment in favor of Defendant on this claim.

**II.     Gender Discrimination**

A plaintiff illustrates a Title VII gender discrimination claim either by producing direct evidence of Defendant's unlawful discrimination or by producing evidence that creates an inference of unlawful discrimination under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007). Direct evidence of unlawful discrimination constitutes "'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011). If there is no direct evidence of discrimination, [Plaintiff] must create an inference of discrimination by proving the following elements: "[s]he (1) is within the protected class, (2) was qualified to perform her job, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated employees who were not members of the protected class." *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 954-55 (8th Cir. 2011).

As stated above, there is a genuine issue of material fact as to whether Yoachum harassed Plaintiff because she was a woman. Thus, Defendant is not entitled to summary judgment on this issue and, therefore, in order to ultimately prevail on its summary judgment motion, Defendant must show that Plaintiff did not suffer an adverse employment action.

An adverse employment action "is a tangible change in working conditions that produces a material employment disadvantage. This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to constructive discharge. Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an

5

adverse employment action." *Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 954-55 (8th Cir. 2011). Here, Plaintiff simply alleges that she was deprived of the privilege of working in an environment that has a zero tolerance policy for harassing, violent and/or threatening behavior. Defendant does have such a policy so, technically, Plaintiff was not deprived in working where there was such a policy. The real question is whether there was a tangible change in Plaintiff's working environment (i.e., termination, pay deductions or a change in Plaintiff's job duties or responsibilities). There are no facts to support the contention that Plaintiff suffered an adverse employment action. *See Wilkie,* 638 F.3d at 954 (holding that Plaintiff's claim for gender discrimination failed as Plaintiff was never terminated, her pay was not cut and her job duties or responsibilities were not changed and, further, her claim for constructive discharge failed when Plaintiff alleged a co-worker made sexually suggestive comments to her; rubbed his foot against her foot; would call her at home intoxicated; came to her home unannounced on two or three different occasions; and Plaintiff found the co-worker laying naked in her bed). Thus, it is appropriate to grant Defendant's summary judgment motion on this claim.

**III.   Disability Discrimination**

To establish a claim for disability discrimination, Plaintiff must show: "(1) that she was disabled, (2) that she was qualified to do the essential job function with or without reasonable accommodation, and (3) that she suffered an adverse action due to her disability." *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 768 (8th Cir. 2008). An adverse action for disability discrimination is the same as it is for gender discrimination. *See Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008)("An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage."). As we have previously

established that there are no facts supporting the contention that Plaintiff suffered an adverse employment action, it is also appropriate to grant summary judgment in favor of Defendant on this claim.

Furthermore, Plaintiff cannot establish that she was disabled at the time of her employment. In order to be considered disabled for purposes of a disability discrimination claim, Plaintiff must have a "physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(1)(A). Plaintiff has presented no evidence that she had a physical or mental impairment that substantially limited one or more of her major life activities when she worked at the Springfield post office. Though Plaintiff received a partial disability rating by the Veteran's Administration before she began her employment with the Stoutland branch of the post office in 2001, Plaintiff was able to continue working at various branches of the post office despite this partial disability rating. Moreover, the Veteran's Administration did not designate Plaintiff as fully disabled until after she quit working at the Springfield post office.

Finally, Plaintiff has no evidence that Yoachum's actions were based on her disability. Though Plaintiff had been diagnosed with several medical and mental conditions, there is no evidence that the Springfield post office was aware of these conditions. Plaintiff argues that the post office was aware of her disability due to the paperwork that she filled out at the beginning of her employment. There is serious doubt about whether the paperwork with the Springfield post office had the "disability" notation, however, even if we assume the Springfield post office was fully aware of the partial disability Plaintiff had received from the Veteran's Administration, there would be no reason for Springfield to consider it to be disabling since Plaintiff had been working at other post offices without any limitations. For these reasons, summary judgment is appropriate on this claim.

7

## VI. Constructive Discharge

Constructive discharge is where an employer "deliberately renders the employee's working conditions intolerable" which forces the employee to quit. *Wright v. Rolette County*, 417 F.3d 879, 886 (8th Cir. 2005). To establish a constructive discharge claim, Plaintiff must prove that a reasonable person would find her working conditions intolerable and Defendant intended to force Plaintiff to quit. *Id.* However, because Plaintiff's constructive discharge claim would be based on the same facts as her hostile work environment claim, Plaintiff's constructive discharge claim also fails. *See O'Brien v. Department of Agriculture*, 532 F.3d 805, 811 (8th Cir. 2008)(affirming the district court's grant of summary judgment in Defendant's favor because Plaintiff premised her constructive discharge claim on the same allegations the court found insufficient to establish a hostile work environment.). Thus, it is appropriate to grant summary judgment in favor of Defendant on this claim.

## CONCLUSION

For these reasons, this Court **GRANTS** Defendant's motion for summary judgment. Summary judgment is entered in Defendant's favor on all counts.

**IT IS SO ORDERED**.

DATED: January 30, 2012   */s/ Richard E. Dorr*
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT